KOON *v.* SNODGRASS *et al.*

Decided August 26, 1881.

1. If the purchaser of lands at a sale made by the sheriff for delinquent taxes fraudulently represents to the owner of the land, that the land so bought was a different tract of land and one, in which the owner has no interest, with a view of preventing such owner from redeeming the land within a year of such sale, and it is for that reason not redeemed by the owner, such fraudulent purchaser may be perpetually enjoined from obtaining a deed for such land.

2. The proper mode of making a legal tender is to actually produce and proffer the exact sum due ; but this may be dispensed with by the party, to whom the money is to be paid, when he refuses to receive the money, not on the ground that the money is not produced, nor on the ground that the amount produced was not the exact amount offered, but on some collateral and entirely distinct ground.

3. A party has a right to quiet his title to a tract of land by enjoining a pur-
chaser at a tax-sale from obtaining a deed for his parcel of land, if the
defendant did not at such sale in fact purchase his parcel of land.

4. If such party has tendered to such purchaser within one year after the sale
the amount he paid for the land, as shown by the sheriff's receipt, and
such additional taxes, if any, as may have been paid by the purchaser
and interest on such purchase-money and taxes at the rate of twelve per
cent. per annum from the time the same may have been paid, he may
enjoin such purchaser from obtaining a deed for the land, though the
money so tendered was refused, and it was not paid to the recorder or
any one else within a year from the sale.

Appeal from and *supersedeas* to a judgment of the circuit
court of the county of Marion, rendered on the 8th day of
November, 1877, in a cause in said court then pending, where-
in Oliver N. Koon was plaintiff, and Ezekiel C. Snodgrass and
others were defendants, allowed upon the petition of said Koon.

Hon. Charles S. Lewis, late judge of the second judicial
circuit, rendered the decree appealed from.

GREEN, JUDGE, furnishes the following statement of the
case :

In February, 1873, Oliver N. Koon filed his bill in the
circuit court of Marion county against Ezekiel C. Snodgrass,
to enjoin him from procuring a deed for a parcel of land of
the plaintiff, which the defendant, Snodgrass, had purchased
at a sale made by the sheriff of Marion county of lands de-
linquent for taxes for the years 1869 and 1870. The bill
states, that the parcel of land claimed by the defendant, Snod-
grass, consisted of a portion of a piece of land in the town of
Mannington in said county adjoining the store-lot of Koon &
Bro. being the same portion of said parcel, on which stood a
photograph gallery, and is fifteen feet in front on Market street
and twenty four feet back running with the Koon property,
the whole of which portion of said parcel of land was covered
by said photograph gallery. The bill states, that H. B.
Furbee and wife executed a deed for a parcel of land to the
plaintiff dated January 16, 1869, and on the same day it was
acknowledged by the grantors before a justice of the peace,
and it was recorded September 23, 1870. This purchase and
deed included not only the ground, on which said photograph
gallery stood, but it ran back to Pyles Fork of Buffalo

creek.  He states, that after he bought this parcel of land, he found, that Henry B. Furbee did not have the legal title thereto, if he had any title, and he was informed and believes, that it was owned by his father, James Furbee, who held the legal title thereto; that on finding this out the plaintiff, to get title to this parcel of land, bought it of James Furbee, who with his wife conveyed it to him by deed dated August 3, 1872, which deed was admitted to record December 6, 1872; that it is true, that a few days after he obtained his deed from Henry B. Furbee for this ground, on which the photograph gallery stood and running back to said run, James Furbee and wife signed a deed to said Henry B. Furbee for two parcels of land in the town of Mannington, one of which was just the ground, on which said photograph gallery stood, and the other was a parcel of land described in the deed as lying on the Baltimore and Ohio railroad.  This deed was acknowledged before a justice on the day it bears date, January 20, 1869, but was not recorded.  On the first of March, 1869, James Furbee and wife acknowledged before a notary public another deed to said Henry B. Furbee, for the ground, on which this photograph gallery stood fifteen feet in front and twenty four feet back, which deed is dated January 1, 1869.

The plaintiff in his bill alleges, that these deeds were never delivered to Henry B. Furbee, the grantee in them, though they were signed and acknowledged before an officer; that Henry B. Furbee never paid for or owned the ground, on which this photograph gallery stood, and had neither a legal nor equitable title thereto, but the title was in James Furbee, till he conveyed it to the plaintiff, August 3, 1872.  This, the bill says, the plaintiff believes to be the fact, but he cannot say it positively; but that it is true of the deed dated January 1, 1869, if not of the one dated January 2, 1869.  This last deed may have been delivered; but if it was, it conveyed not merely the ground, on which the photograph gallery stood fifteen feet front by twenty four feet back, but also as much ground in the rear of this gallery as well as the separate parcel of land on the Baltimore and Ohio railroad in said town; that soon after the plaintiff bought this parcel of land of Henry B. Furbee, he took possession of it claiming it as his own and

improved greatly the building upon it, this photograph gallery, and still holds it and is paying the taxes thereon; that it is said, that on December 1, 1871, the sheriff of Marion county sold certain lands and lots in said county for the non-payment of taxes thereon for the years 1869 and 1870.

Some time afterwards, in a few weeks or months thereafter, the plaintiff learned, that the defendant, Snodgrass, had at said tax-sale purchased a lot in Mannington charged in the name of Henry B. Furbee returned delinquent for the year 1869, which report proved to be true.   The plaintiff did not believe, that the land purchased by Snodgrass was the photograph gallery land, because Henry B. Furbee on April 1, 1869, when this assessment was made, did not have either the legal or equitable title of this land; and because the property sold in the name of Henry B. Furbee is described as "a lot in Mannington," while this parcel of land had never been laid off as a lot or called a lot, nor was it so described in the deed from James Furbee and wife to H. B. Furbee; and also the plaintiff was informed, that Henry B. Furbee was then, April 1, 1869, or had been the owner of other property or town-lots in Mannington, to which the plaintiff concluded this assessment and sale referred.   But though the plaintiff did not believe, that the defendant, Snodgrass, had bought at the sheriff's sale this parcel of land, which the plaintiff claimed, yet fearing trouble with him from his character within a year after this sale he offered to pay, and tendered to the defendant, Snodgrass, the seventy-one cents he had paid for this land purchased at this sale and the interest thereon at the rate of twelve per cent. per annum, to redeem this land; that the defendant, Snodgrass, refused to receive the same, on the ground that he had not purchased for delinquent taxes the property of the plaintiff. He said, that it was not this gallery lot, which he had bought, but another lot, with which the plaintiff had nothing to do; and relying on this statement the plaintiff did not, as he might and but for this statement would have done, redeem this land within the year by paying the amount due and the damages to the recorder.

A few days after, December 1, 1872, when the time had expired for redeeming this land, the defendant, Snodgrass, began claiming this gallery-lot or a portion of it as purchased by

him at the sheriff's sale. The plaintiff then again tendered him the requisite money to redeem it; but he refused to receive it, saying it was then too late to redeem this parcel of land. The plaintiff then tendered the requisite amount for redemption to the recorder, who for a like reason refused to receive it. The defendant, Snodgrass, then got the surveyor to make out a plot and report of this gallery-parcel of land, including the whole of the land conveyed to the plaintiff as the land purchased by the defendant, Snodgrass. This report was made December 31, 1872; and he asked the recorder to make a deed therefor to him. This the defendant resisted; and the deed was not then executed. The defendant, Snodgrass, still threatens to get a deed therefor, and has given to the plaintiff a written notice, that on the first day of the next term thereafter of the circuit court of Marion county he will ask the court to appoint a commissioner to convey this land to him according to said report. This notice is filed with the bill and dated January 1, 1873. There is also filed with the bill a statement taken from the office of the county court of Marion, showing, that this land sold was described simply as a lot in Mannington charged to Henry B. Furbee sold for the non-payment of taxes thereon for the years 1867 and 1870, that the amount of taxes, for which it was sold, was forty cents; and that the purchaser was E. C. Snodgrass, the land sold being described as the lot and the purchase-money paid seventy one cents. The bill alleges that this is all the clerk's office shows. The validity of the sale is disputed, and it is claimed, that a deed for the land would not be valid, but the obtaining of such a deed would throw a cloud over the plaintiff's title.

The plaintiff claims, that the defendant, Snodgrass, should be enjoined from obtaining a deed for said land of the plaintiff, because it was not the land returned delinquent and sold, and because if it was the property sold, said Snodgrass should be estopped from so saying because of his false and fraudulent representation to the contrary to the plaintiff. James Furbee and Henry B. Furbee were made defendants to this bill also, but they never answered. The injunction asked was awarded, the bill being sworn to, and the injunction bond given.

On October 2, 1874, E. C. Snodgrass filed his answer also

sworn to. He admits the various deeds referred to in the bill and filed as exhibits. He denies, that the legal title to said land after January 1, 1869, was not in Henry B. Furbee, in whose name it was properly assessed and sold for non-payment of taxes, and alleges, that the deeds from James Furbee to Henry B. Furbee were by the plaintiff put on record, long before he obtained the deed from James Furbee himself, and that the plaintiff paid taxes on said land. He alleges, that this land was known as a lot, and calls attention to the fact, that in one of the deeds from James Furbee this ground is thus described: "second lot begins at Koon's storehouse-lot and runs in front with Market street, being known as the gallery-lot, and embraces just the land upon which said gallery stands." In the other deeds it is described as a fraction of ground, its boundaries being set out. He denies that Henry B. Furbee in 1869 owned any lots in Mannington except this gallery-land and that before referred to, as conveyed to him, lying on the Baltimore and Ohio railroad. He had owned lot number eighteen but had sold it some years before. The respondent admits, "that the complainant came to him within the year from the time said lot was sold, and while the same was yet redeemable, and offered to pay your respondent what your respondent had paid for said property; but he did not tender any sum of money for the redemption of said lot." He further says, that "he told plaintiff, that he did not then know, or had not yet ascertained, what lot or parcel of land it was, that had been sold in the name of Henry B. Furbee for taxes, he not having then examined the land-books of said county to ascertain the facts." He admits, that after the year had expired, the money to redeem this land was tendered by the plaintiff and refused, because tendered too late; and he says further, that he then told complainant, "that if he could get the recorder of the county to receive the same, he could pay the same to him;" and he adds in his answer: "Your respondent therefore refused to receive the same before and after the expiration of one year."

The surveyor's report is filed with the answer. It gives the boundaries of the parcel of land and says it contains one thousand and twenty-five square feet and is nearly three times as large as the ground on which this Duquesne gallery stands.

The refusal of the recorder to make him the deed is admitted, and his notice, that he would ask the circuit court to order the deed to be made. The respondent in his answer further says, that this gallery-lot was all the land in Mannington, which Henry B. Furbee claimed in 1869, as he had abandoned the parcels of land conveyed to him, before described as in Mannington and on the Baltimore and Ohio railroad; and he had left Mannington and deposited the deeds, which James Furbee had made to him, with A. Prichard to have them recorded, and he gave them to the plaintiff or some one for him; and after this abandonment of this railroad-lot by Henry B. Furbee his father conveyed it to Wm. Hull, as by deed filed.

This deed on its face recites, that $328.00 was paid for this lot to Henry B. Furbee; and it therefore shows the reverse of an abandonment of it.

There is filed with this answer the sheriff's receipt for sixty-eight cents, the purchase-money paid by Snodgrass for this land, which is described as a lot in Mannington charged to Henry B. Furbee. The receipt states, that the amount of taxes due thereon was forty cents, and the amount of the purchase-money sixty-eight cents. This answer was replied to generally, and numerous depositions were taken by both sides. On the question, whether the defendant by fraudulent misrepresentation misled the plaintiff and induced him to believe, that the lot, which the defendant had bought for taxes, was not the gallery-lot, one of the plaintiff's witnesses proves, that the defendant, Snodgrass, in a confidential talk told him, that he had bought this gallery-lot at the sheriff's sale and asked him to say nothing about it; and he further testified, that he informed the plaintiff, that Snodgrass told him he had bought this gallery-lot at the tax-sale, and he gave him from the books in the clerk's office the amount of sale; and thereupon the plaintiff testifies he went to the defendant, Snodgrass, and he told him, that this was not the lot he had bought at the sale, that he had examined into the matter and found, that the lot, he had bought, was one known as the Jones lot, which Henry B. Furbee formerly owned. All this occurred within about six months after the sale, and when the land was liable to redemption.

On the question, whether a tender of the required amount

to redeem this land was made by the plaintiff to the defendant within the year, the plaintiff testified positively, that he had made a tender of the full amount including the damages within a year; and another witness testified, that the defendant, Snodgrass, admitted that such a tender had been made and in good time. The defendant, Snodgrass, on the other hand testified, that the plaintiff asked him within the year if he had bought this gallery-lot, and he told him he did not know, that he had bought a lot in Mannington sold in the name of Henry B. Furbee. He says he offered to pay him what he had paid the sheriff, and take up the sheriff's receipt. He refused to receive it, saying he did not know that this was the lot, and if he wanted to redeem it, the law prescribed how it could be done. He did not say, that the amount was insufficient. He says he made no tender of money, exhibited no money to him, but proposed to pay what he had paid the sheriff, if he would receive it, which he refused to do. He says he did not ascertain, what lot he had actually bought, till more than a year after the sale had expired. He denies, that he told the plaintiff, it was the Jones lot he had bought. Another witness proves, that he was present when the plaintiff was proposing to redeem this land by a payment to the recorder, when he was asked by the recorder what was his duty in the premises. Under his advice the recorder told the plaintiff he must first tender the money to Snodgrass, and if he refused to receive it, he could then pay it to the recorder, if done within the year. This witness also testifies, that after the expiration of the year, he was present when the plaintiff was proposing to redeem this land by a payment to the recorder. The recollection of this witness is, that the plaintiff said he had not tendered the money to Snodgrass. The recorder testifies, that the plaintiff said he had gone to Snodgrass to redeem the land, and that Snodgrass had said he did not claim it, and he must come to the recorder to redeem it, and he told him to go to Snodgrass again and tender him the exact amount, for which it was sold and costs, and then if he refused, to come to him, and he would receive it. He told him the exact amount necessary to redeem it. The next time he came back was after the year had expired, and therefore he, the recorder, refused to receive the money offered for redemption.

On the question, as to whether the gallery lot was the lot sold by the sheriff and bought by the defendant; the evidence in addition to the deeds filed is, that shortly after this sale for taxes on enquiry of him by James Furbee and one of his sons this son says, Snodgrass, the defendant, stated that he did not know, what land he had bought; they told him, that Henry B. Furbee was not properly chargeable with any land in Mannington; and he said, he supposed it was a mistake. They proposed to redeem this lot or land, and he said, that it was a small matter, and there would be no trouble about it. He refused to receive the money for the redemption of this land. He said, that neither Henry B. Furbee nor any one claiming under him should have any trouble about the matter. He also says, that this parcel of land in controversy was a part of lot No. 40, and the whole of this was charged to James Furbee in 1869 and 1870, and the taxes were paid upon it by him. He says, that the understanding, he thinks, was that the deeds from James Furbee to Henry B. Furbee were to be cancelled and not recorded. In the fall of 1869 or winter of 1870 Henry B. Furbee left this county. He refused to pay this tax, because it was, he thought, it improperly charged to him. The lots were a gift from James Furbee to him; the deeds were, he thinks, held, because it was thought they might be changed.

Prichard testifies, that the deed dated January 1, 1869, by James Furbee and wife to Henry B. Furbee was left at his house by Henry B. Furbee, that he (Pritchard) should have it put on record. He delivered this deed to one of the plaintiff's brothers afterwards, who came to his house for it, as he understood, to be recorded.

This being the substance of the testimony, on November 8, 1877, the court rendered a decree declaring, that the defendant, Snodgrass, is entitled to obtain a deed for the land described in the deed of January 1, 1869, and that the injunction should be dissolved, and the bill be dismissed, and decreed accordingly, and directed the clerk of the county court of Marion as a special commissioner to make such deed.

An appeal and *supersedeas* were granted to this decree on the petition of the plaintiff.

*James Morrow, Jr.,* for appellant, cited the following authorities: Adam's Eq. (3d Am. ed.) 198, 199; 7 Gratt. 52; Code, ch. 31, §§ 10-18; 13 Wall. 506, 511; Cooley Tax., 213 *et seq. ;* Cooley Const. Lim., 74-78; 3 W. Va. 522.

*E. C. Snodgrass & Son,* for appellee, cited the following authorities: Code, 638, §§ 5, 6; *Id.,* ch. 31, §§ 10, 11, 12; *Id.,* § 19; Long's Point's, 1873-5, p. 160; Code, ch. 29, §§ 39, 40; 2 Tuck. Com. 460; 5 W. Va. 135.

GREEN, JUDGE, announced the opinion of the Court:

I have stated the evidence in this case at considerable length. It is contradictory, but, I think, taken altogether we may draw from it the inference, that the following are the substantial facts of the case: On January 1, 1869, James Furbee and wife conveyed to their son Henry B. Furbee a fraction of a lot in Mannington containing only forty square yards covered entirely by a building known as a daguerrean gallery; twenty days afterwards the same grantors conveyed to Henry B. Furbee this forty square yards, on which stood this building, and also another parcel of land in the town of Mannington on the Baltimore and Ohio railroad, which we will for the sake of perspicuity call the railroad-lot. But four days before the making of this last deed, that is, on January 16, 1869, this gallery-ground of forty square yards was conveyed to the plaintiff, Koon, by said H. B. Furbee and wife. So that on April 1, 1869, Henry B. Furbee owned in Mannington the railroad-lot and no other property. The forty square yards, on which stood the photograph-gallery, he had sold and conveyed to the plaintiff for $200.00 on January 16, 1869. In the assessment of lands for 1869, which is to be regarded as made of April 1, 1869, (see Code of West Virginia, ch. 29, § 39, p. 161), there was assessed in the name of Henry B. Furbee a lot in Mannington. When this assessment was made, he owned no land in Mannington except what we have designated as the railroad-lot. He had then left Mannington and the State, and the defendant, Snodgrass, claims that he had abandoned this lot. But this does not appear to be the fact. The deed from his father to him was not recorded, but it had been acknowledged and delivered; and so far from his abandoning this lot we find him after-

42

wards, on January 6, 1870, selling this railroad-lot to William Hall for $328.00 cash. It is true, the deed to Hall was made by his father, but it recites, that the purchase-money was paid to Henry B. Furbee. The tax on this lot in Mannington assessed to Henry B. Furbee in 1869, was forty cents, and neither it nor the tax for 1870 was paid, and this lot in Mannington charged to Henry B. Furbee was returned delinquent for the non-payment of these taxes. It was then on December 1, 1871, sold by the sheriff for these delinquent taxes and bought by the defendant, Snodgrass, for either sixty-eight or seventy-one cents; the sheriff's receipt says sixty-eight cents, the abstract taken from the clerk's office filed with the bill says seventy-one cents. Lot No. 40 in Mannington was charged in 1869 to James Furbee, and the taxes on it were paid by him; and this lot so taxed included the 40 square yards, on which this photograph-gallery stood.

Before the end of the year, in which the party has a right to redeem his land (see Code of W. Va. p. 190 ch. 31 § 15) probably in the summer of 1872, the defendant, Snodgrass, told one Beatty, that the lot, which he had bought, and which was sold in the name of Henry B. Furbee, was this photogragh-gallery lot; and this he did confidentially, asking him to say nothing about it. But Beatty at once told Koon, the plaintiff, that Snodgrass claimed he had bought his gallery-lot for taxes, and he thereupon called on Snodgrass and offered to redeem the same by paying him the amount, which he had paid, and the interest at 12 per cent. per annum thereon. No specific sum, which he would pay, was probably mentioned, and no money was produced. Snodgrass, as appears by his answers, seems to have thought, that under the 15th and 16th sections of ch. 31 of the Code page 190 he was not bound to receive it, and he refused to receive it, telling him at the same time, that the lot he had bought charged in the name of Henry B. Furbee was not the gallery-lot but some other lot, in which the plaintiff had no interest. The plaintiff then went to the recorder and offered to redeem the land. This was probably in November, 1872. The recorder told him to go again to Snodgrass and tender him the exact amount, for which it was sold, with the 12 per cent interest upon it, and if he refused to receive it, he, the recorder, would then receive it; and he told him the exact amount necessary to redeem it. This ex-

act amount the plaintiff formally tendered to Snodgrass, but not till after the expiration of a year from the time of the sale; and he refused to receive it as too late; and for this same reason the recorder also refused to receive it of him.

The question involved in this case is, whether the defendant, Snodgrass, was entitled under these circumstances to a deed for this forty square yards, on which this photograph-gallery stood. Assuming for the present for arguments sake, that the land bought by the defendant at the sheriff's sale was forty square yards, on which the photograph-gallery stood, and that it was properly sold, as listed, in the name of Henry B. Furbee, and had been properly returned as delinquent for the non-payment of taxes, and the sale was in all respects regular, would the defendant, Snodgrass, have been in this case entitled to a deed therefor? His claim, that though there had been tendered to him by the plaintiff the correct amount for the redemption of this land within one year from the sale, still he would be entitled to his deed, unless the plaintiff also paid it to the recorder within the year, is not sustained by a true interpretation of the 15th and 16th sections of ch. 31 of the Code of W. Va., p. 190, on which he relies.

The 15th section provides, that the plaintiff in this case might redeem the same within the year by paying a certain sum to the purchaser. It is therefore obvious, that he could not be defeated in this his right of redemption by the plaintiff's refusal to receive the money when tendered to him. The 16th section in providing, that if the purchaser refuses to receive the money, the owner of the land may pay it to the recorder within one year, does not render such payment to the recorder essential to the perfection of the plaintiff's right to the land, but was intended simply to prevent the recorder from making a deed to such purchaser, which he might otherwise have done in ignorance, that such a tender had been made to him, and to impose on the purchaser, after the recorder had received the money from the purchaser, the necessity of applying to the court to settle the rights of the party claiming the right to redeem and of the purchaser, before any deed should be made.

In the present case the recorder states, that the money to redeem this land was tendered to him by the plaintiff within the year; and it would be strange indeed, if his refusal to re-

ceive it could deprive the plaintiff of his land, if in fact he had previously tendered the money for the redemption to the defendant, Snodgrass. Was such tender to the defendant, Snodgrass, in this case necessary? The evidence though contradictory, shows, I think, that the plaintiff sought Snodgrass within less than a year from the time of the sale for the express purpose of redeeming this land, and offered to pay him the full amount necessary to redeem it, but he was told by Snodgrass, that he did not claim this land, and that the lot he had bought was a different lot, in which the plaintiff had no interest, and he refused therefore to receive the money. The evidence, I think, satisfactorily shows, that this statement, that he, Snodgrass did not claim this land, was false, as he had prior thereto expressly stated to another party, that he did claim this land as the land he had bought, and it is equally obvious, that this false statement was made with the fraudulent purpose on the part of Snodgrass to lull the plaintiff into security, so as to prevent his taking what he, Snodgrass, thought were the necessary steps to be taken by him to redeem this land within the year.

Now the law never allows a party to defeat another's right by fraud. In *Southworth* v. *Smith*, 7 Cush. 391, A., the purchaser of real estate at a sale, absented himself from home with the fraudulent purpose of preventing a debtor or his assignee from redeeming the land within the time required by the law; and the court decided, that this fraudulent conduct of the purchaser would exclude him from afterwards claiming, that a tender was not made to him within the time the law required. This case is cited approvingly by Judge Haymond in delivering the opinion of this Court in *Gas Company* v. *Wheeling*, 8 W. Va. 363.

The fraudulent misrepresentation in the case before us, made with the purpose of misleading the plaintiff and preventing him from formally redeeming the land, must have the same effect, and must preclude the defendant, Snodgrass, from now objecting, that a legal tender of the money necessary to redeem this land was not made to him within a year. In the case before us, however, what was the equivalent of a legal tender seems to have been made by the plaintiff to the defendant, Snodgrass, within a year. It is true, that the legal incidents of a valid tender are the actual production and proffer

of the precise sum due; but these may be dispensed with expressly or impliedly by the party, to whom the money is to be paid. There is for instance no necessity for the actual production of the money, when the refusal to receive it is based not on its non-production, but on an entirely distinct ground in no wise connected with the non-production, and such as by the strongest implication waives the necessity of such production, as in this case, where the party declared, that he would not receive money, because the plaintiff did not owe it, as he was mistaken in supposing, that any claim was set up to his land. This declining for such a reason would equally waive the necessity of the exact amount due being tendered. Thus in *Bevans* v. *Rees*, 5 Me. & W. 306, Lord Abinger says: "I am prepared to say, that if the creditor knows the amount due him, and if offered a larger sum and without any objection on the ground of want of change makes quite a collateral objection, that will be a good tender." Here the offer to pay was of the amount paid by Snodgrass for the land and twelve per cent. per annum interest thereon. No calculation was made; and the precise sum the plaintiff offered to pay was probably not stated; but the objection was not to the indefiniteness of the amount offered, but was entirely collateral thereto, and therefore such indefiniteness could not make this tender invalid. For a like reason the non-production of the money offered ought not to make this tender invalid. See Judge Rivers's opinion in *Lohman* v. *Croch et als.*, 19 Gratt. 344, 345 and *Southworth* v. *Smith*, 7 Cush. (Mass.) 391.

But as there is contradictory evidence on the question, whether the plaintiff was prevented from redeeming this land within a year by the fraudulent conduct of Snodgrass, and also some uncertainty as to the actual facts, which accompanied the tender made by the plaintiff to Snodgrass within the year, I prefer to base the conclusion, which I have reached in this case, on another ground, as in reaching such conclusion I have to rely on only the written evidence in the case and undisputed facts. To my mind it satisfactorily appears from the record, that the defendant Snodgrass, did not buy at the sheriff's sale for delinquent taxes the forty square yards of land, on which stands the gallery described by the plaintiff, and is of course entitled to no deed therefor. On April 1, 1869, this lot in Mannington, whatever it be, which the defendant Snod-

grass bought, was assessed in the name of Henry B. Furbee. At that time, so far as the record of the county disclosed, the legal title to this forty square yards, on which the gallery stood, was in James Furbee, his father ; and it would have been properly assessed in his name ; and one of his sons testifies, it was assessed in his name, it being a portion of lot No. 40, which was assessed in his name, and the taxes for that year were paid by him.    If this be so, of course it could not have been legally sold, as it was; but if was not so assessed fn the name of James Furbee, as before the 1st of April, 1869, he had conveyed it to Henry B. Furbee, and he had conveyed it to the plaintiff, Koon, it might have been assessed in the name of Koon.    As he had not put his deed of record, it might have been assessed in the name of Henry Furbee, his grantor.    But the assessment in the name of H. B. Furbee would have been, while legal, very singular and one, which the assessor could have made only in ignorance of the real facts ; for on April 1, 1869, Henry B. Furbee had not the title to this land, so far as the records disclosed, nor did he in point of fact at that time have any title to this land either legal or equitable.    He had no interest in it of any sort ; and it is therefore highly improbable that it would be assessed in his name.    Nor is there any thing in the assessment, which was made in his name, to indicate, that this forty square yards of ground was so assessed, on the contrary the entry itself is almost conclusive, that it was not assessed in his name.    What is assessed in his name is a lot in Mannington.    It would be a strange misnomer if the assessor had described forty square yards, on every foot of which a building stood, as a lot in Mannington, more especially as the law required the assessor, when he assessed land, on which there was a building, to state this fact and to assess the building and land separately, where the building exceeded $100.00 in value. See Code of W. Va. ch. 29 § 27 p. 158.    While the record does not disclose the value of this building, yet as the plaintiff paid, as the deed from Henry B. Furbee to him shows, $200.00 for this building and the ground it stood on, it was probably worth more than $100.00.    But if it were otherwise, the natural designation of this land would not have been a lot in Mannington, but the ground, on which stood a photograph-gallery in Mannington or something equivalent.    The

inference is therefore very strong, that by a lot in Mannington the assessor did not mean this forty yards of ground covered by a building.

This inference is greatly strengthened by the fact, that at the date of this assessment of a lot in Mannington in the name of Henry B. Furbee, that is on April 1, 1869, he was the legal and equitable owner of another parcel of land in Mannington, which, so far as the record shows, was not built upon. This parcel of land lay on the Baltimore and Ohio railroad, and could certainly have been far more properly described as a lot in Mannington than this forty square yards covered by a building; and when we have in mind that Henry B. Furbee was the legal and equitable owner of this ground, while he had neither a legal nor equitable title to this forty square yards, there can be no doubt, that it is greatly more probable, that by this lot in Mannington was meant this railroad-lot, than the ground on which stood the gallery. It may not have been the purpose of the assessor by a lot in Mannington to designate this land in Mannington on the railroad; but whatever he did mean, it seems to me clear, that he did not mean this forty yards of ground on which this photograph-gallery stood. The language he has used in making this assessment, taken in connection with the surrounding facts precludes, it seems to me, the idea, that this forty yards of ground was meant. If it was not, then of course the defendant, Snodgrass, has no right by virtue of his purchase of this lot in Mannington to a deed for this forty square yards of land; and the injunction, which the court granted to prevent him from procuring such deed, ought on the hearing to have been perpetuated.

The decree of the circuit court of Marion county of November 8, 1877, must be reversed and annulled; and the appellant must recover of the appellee, Ezekiel C. Snodgrass, his costs in this court expended; and this court proceeding to render such decree as the circuit court ought to have rendered, as the plaintiff is entitled to the relief he sought, must perpetuate the injunction heretofore awarded in this cause, and adjudge and decree, that the defendant, Ezekiel C. Snodgrass, do pay to the plaintiff his costs expended in said circuit court.

The Other Judges Concurred.

Decree Reversed.