# CHARLESTON.

## McCLAIN v. BATTON.

Submitted June 17, 1901.    Decided November 16, 1901.

1. DELINQUENT LAND SALE—*Affidavit.*

    Where a sheriff appends to his list of sales of delinquent lands the following affidavit: "I, S. B. Mc., sheriff of the county of D., swear that the above list contains a true account of all the real estate within my county which has been sold· by me to individuals, during the present year, for the non-payment of the taxes thereon for the years 1889 and 1890, and that I am not now directly or indirectly interested in the purchase of·any of said real estate," thus omitting from the affidavit required by law the words, "Nor have I at any time been directly· or indirectly interested in the purchase of any of said real estate," such omission is a fatal defect in the sale and invalidates a deed made in pursuance of a purchase made at such sale.  (p. 126).

2. SHERIFF'S AFFIDAVIT—*Presumption.*

    Such an omission is not a mere irregularity, but a fatal omission, raising a presumption of the violation of section 9 of chapter 31 of the Code.  (p. 126).

3. TAX DEED—*Parol Evidence.*

    Parol evidence is not admissible to uphold or invalidate a tax deed, and it must be determined from the proceedings of record on which the deed is founded and from the face of the deed itself, whether the deed is valid.  (p. 127).

4. TAX DEED—*Purchase Money—Tender.*

    A defective tax deed should not be set aside, unless the person entitled to have the same set aside, shall pay or tender to the purchaser, or his heirs, devisee or assignee, or the person holding under him, or some one or more of them, the purchase money paid for the real estate at the tax sale, and all the taxes since paid thereon for any·year or years for which such person so claiming, or those under whom he claims, have not paid taxes thereon, and the costs of the survey or report, with interest on each of said sums from the date of the payment thereof until paid by such claimant.  (p. 130).

5. TAX DEED—*Irregularities—Equity—Condition.*

    When the taxes paid by a purchaser at a tax sale are a just charge upon the property sold, but the tax sale or deed is invalid because of irregularities in the proceedings, relief in equity, to set aside such sale or deed, will be conditioned upon ⸱the reimbursement of the defendant, and the plaintiff must

| | |
|---|---|
| 50 | 121 |
| 50 | 541 |
| 50 | 121 |
| 54 | 449 |
| 54 | 703 |
| 50 | 121 |
| o55 | 3 |
| 55 | 450 |
| 50 | 121 |
| 56 | 486 |
| c56 | 487 |
| 56 | 492 |
| 57 | 451 |
| 50 | 121 |
| 58 | 353 |
| 50 | 121 |
| f62 | 184 |
| 62 | 185 |
| 50 | 121 |
| 66 | 77 |

keep the tender good by pleading it and paying the money into court, if the amount is ascertainable, and whether it is or not, he must offer in his bill to pay it when ascertained. (p. 131).

6.  BILL—*Relief.—Amendment.*

Where the bill is insufficient but the proof shows the plaintiff is entitled to relief upon the cause of action imperfectly stated in the bill, and the decree is reversed, the cause will be remanded, with leave to amend the bill. (p. 132.)

Appeal from Circuit Court, Doddridge County.

Bill by Stewart L. McClain against Thomas Batton. Decree for complainant. Defendant appeals.

*Reversed.*

J. V. BLAIR, for appellant.

W. S. STUART, for appellee.

POFFENBARGER, JUDGE:

This is an appeal from a decree of the circuit court of Doddridge County, upon a bill filed by Stewart L. McClain against Thomas Batton, to set aside a deed made to Batton by the clerk of the county court of said county, pursuant to a purchase made by him from the sheriff of said county at a sale of lands, delinquent for the non-payment of taxes for the years 1889 and 1890. The sale was made on the 17th day of November, 1891, and the deed executed on the 31st day of June, 1893. The amount of land thus purchased and conveyed is fifteen acres. It adjoins four hundred and ten acres, owned by the defendant, and also a tract of sixty-eight acres, formerly owned by the plaintiff. At the time of this sale, McClain did not own the land. It was taxed and sold in the name of M. J. Lowther and the delinquent taxes for which it was sold were for the year 1889. It was originally a part of a tract of eighty-three acres, afterwards claimed by the plaintiff. It was recited in the deed filed with the bill that A. J. Lowther and M. J. Lowther had sold the eighty-three acres and the four hundred and ten acre tract to Oliver Lowther and also that payment had been made, in various ways, of such portion of the entire purchase-money as equals the value of the eighty-three acres and conveys said eighty-three acres to Oliver Lowther. That deed is dated December 1, 1887, but was not admitted to record until May 26, 1891. At June rules, 1893, a

chancery suit was brought by W. S. Chapman to subject the real estate of said Oliver Lowther, to the payment of certain liens thereon, held by him and others, and such proceedings were had therein that, on the 22d day of November, 1894, W. S. Stuart, special commissioner, sold said eighty-three acres of land to the plaintiff, S. L. McClain, for the sum of three hundred dollars. The sale was confirmed by the court and, on the 17th day of August, 1897, a deed was executed in pursuance of that sale to McClain.

The land book shows that for the year 1897, the tract of eighty-three acres was taxed in the name of Jonathan Stout's estate; that for the year 1880, the sixty-eight acres appeared in his name and fifteen acres, composed of two tracts of seven and one-half acres each, in the name of M. J. Lowther, transferred from the Stout estate; that, for the year 1881, these tracts were taxed in the same way; that, for the year 1882, the sixty-eight acres appeared in the name of Stout's estate and the two seven and one-half acre tracts were combined and taxed in the name of M. J. Lowther as fifteen acres; that the same arrangement appears for the years 1883, 1884, 1885, 1886, 1887, 1888, 1889, 1890 and 1891; and that, for the year 1892, the land was taxed in the name of Oliver Lowther as a tract of eighty-three acres. It seems that in 1879 A. J. Lowther brought a suit for the partition of the Stout land and, in that suit, a survey and plat were made by Daniel Sherwood, who is now dead. The land was found to be not susceptible of partition and was sold and M. J. Lowther became the purchaser. In the survey thus made the eighty-three acre tract was divided into three lots, containing, respectively, seven and one-half acres, seven and one-half acres and sixty-eight acres, and, from the proceedings had in that suit, it resulted that these tracts were entered upon the land books as aforesaid. The decree of sale in the partition suit was made on the 19th day of July, 1881, and the sale thereunder made to M. J. Lowther, was confirmed and a deed ordered to be made to her on the 21st day of March, 1893. From this, it is clear that the fifteen acre tract was properly entered upon the land book and properly charged with taxes for the year 1889, and there is no evidence that the taxes had been paid. It is not claimed by the plaintiff in this suit, that he redeemed this fifteen acre tract from the defendant, but only that immediately before the suit was instituted he tendered the redemp-

tion money to the defendant. As to this tender there is no question. It was made. There is nothing upon which the plaintiff could predicate his claim to relief except alleged irregularities and defects in the sale thereof and the proceedings relating thereto.

There are several of these alleged defects and irregularities. In verifying his list of sales the sheriff annexed the following certificate: "I, S. B. McMillian, sheriff of the county of Doddridge, swear that the above list contains a true account of all the real estate within my county which has been sold by me to individuals during the present year for the non-payment of the taxes thereon for the years 1889 and 1890, and that I am not now directly or indirectly interested in the purchase of any of said real estate; so help me God.

S. B. McMillian, *Sheriff.*"

It is claimed that this affidavit is defective in having omitted the words "nor have I at any time been directly or indirectly interested in the purchase of any of said real estate;" and further in omitting the following clause "as well as the list of all the real estate redeemed, and the names of the persons who redeemed the same during the present year for the non-payment of taxes thereon for the year of ———." Complaint is also made that the words "acres" and "fractions" do not appear at the heads of the columns in which the quantity of land is inserted, rendering it uncertain whether that quantity was fifteen acres, fifteen roods, fifteen poles or fifteen feet of land; that the heading "In what district the land is situated" is erased or stricken out, so that it does not appear in what district the land purchased is located; that under the heading "Local description of the land" the words "New Milton District" are inserted; that in the column headed "Amount of taxes due thereon for State and State school purposes including interest and commissions" the words "and commissions" are stricken out and the words "and damages for which sold" were inserted by the sheriff, so that the list in this respect fails to comply with the law then in force; that the list contains no column showing "Amount of school district, and independent school district taxes due thereon, including same;" that it includes no column showing "Amount of other district taxes due thereon, including same;" that it contains no column showing "Amount of municipal taxes due thereon, including same;" that, in the column headed

."Quantity of land sold," the words "acres" and "fractions" are stricken out; that there is a column in said list headed "Date of each sale 1891," which was not then required by the statute; that there is no column showing "whole amount paid for purchase-money, fee for receipt and costs of publication" as then required by statute, but instead thereof there is a column headed, "Amount of purchase-money paid, including interest, damages, commission, fee for receipt and cost of advertising;" and that the list contains but eleven columns while the statute provided or required seventeen columns.

The defendant's demurrer to the bill was overruled and thereupon he filed a full and complete answer, in which, among other things, he denies that the sale made by the sheriff was irregular or failed to comply with the statute, and that the affidavit was defective and irregular, as alleged in the bill, and also that the affidavit omitted a material fact or clause, required by law, and insists that the affidavit and report of the sale substantially, and in effect, comply with the law then in force in this State. He also avers that the sheriff had not, at the time of sale, nor had he at any time, been directly or indirectly interested in the purchase of said land or any other real estate sold by him.   The answer also denies generally all the allegations of the bill, respecting supposed omissions, defects and irregularities and avers that, if they should appear, they are not material or sufficient to vitiate the said sale or constitute any ground for avoiding the sale and conveyance to the respondent.   As an exhibit with this answer the memorandum and receipt given by the sheriff to the purchaser is filed.   It is substantially like the exhibit filed with the bill, purporting to be taken from the sheriff's list of sales.   Upon the hearing the court decreed that the deed be cancelled and the defendant has appealed.

Substantially all the irregularities or departures from the form laid down in the statute exist as alleged in the bill.   The allegation of the bill as to the form of the sheriff's affidavit is true. The sheriff himself was examined as a witness and says he made the affidavit as he did, in obedience to instructions given him by the auditor of the State, but that he could have made the affidavit, required by section 13 of chapter 31 of the Code, truthfully and with consistency and propriety.   He also swears that he was not directly or indirectly interested in the purchase of any of

the real estate sold by him at the time he made the sale nor at any time.

This Court held in *Hays* v. *Heatherly,* 13 W. Va. 613; *Jackson* v. *Kittle,* 34 W. Va. 207; *Baxter* v. *Wade,* 39 W. Va. 281, that this defect vitiates the sale and is such a defect as will prevent the making of a deed under the sale. In *Phillips* v. *Minear,* 40 W. Va. 58, this Court decided that "Where a sheriff who sells land for non-payment of taxes, under chapter 31 of the Code, appends to the list of sales not the affidavit required by law according to the form prescribed by section 13 of chapter 31, but, instead of saying in such affidavit, "I am not now, nor have I at any time been, directly or indirectly interested in the purchase of any of said real estate," substitutes therefor the phrase, "I am not directly or indirectly interested in the purchase of any of said land," and there being no other evidence of any kind on the point, *Held*: "Such case (sale) is properly held to be void under section 9 of chapter 31." In said case it is further held that "It is not the object or effect of the curative section 25 of chapter 31 of the Code to impair or in any way or to any degree affect section 9 of chapter 31, or to prescribe that its violation may not be shown by implication." In *Phillips* v. *Minear,* the affidavit was substantially like that in this case. The same omission was there complained of and held by this Court sufficient to avoid the deed. It was held there to fairly arise by implication upon the record from the omission of a vital part of the prescribed affidavit that section 9 of chapter 31 of the Code had been violated. There, however, no evidence was taken upon the question whether the sheriff had, in point of fact, been at any time interested in the sale of the land, and that is the only respect in which that case differs from this. Here the sheriff testifies as a witness that he had not at any time had any such interest. Can the defect be cured by parol evidence? Must not the case be determined by the record?

It seems to be regarded as a rule of law in *Williamson* v. *Russell,* 18 W. Va. 612, and *McCallister* v. *Cottrille,* 24 W. Va. 174, that unless section 25 of chapter 117 of the Acts of 1872-3 which is amended by chapter 139 of the Acts of 1882 and now appears as section 25 of chapter 31 of the Code, authorizes it, parol evidence cannot be introduced for the purpose of upholding or invalidating a tax deed. JUDGE SNYDER, delivering the opinion of the Court in the latter case, says: "It seems to me, therefore,

that we are not authorized to construe the said new provision of section 25 of chapter 117 of the Acts of 1872-3, as intended to permit the introduction of parol evidence to establish the validity or the invalidity of a tax deed. But that the legal construction and effect of said provision is to declare that the court or jury shall determine from the proceedings of record on which the deed was founded and from the face of the deed itself, whether or not any such irregularity appears thereon as would mislead a man of ordinary business capacity and was of such character as would be calculated to prevent the owner from redeeming his land, and thus materially prejudice his rights. And if such irregularity thus appears, it must be conclusively presumed that the owner was thereby prejudiced and his rights materially affected and such deed must be held and declared void." The case in which this proposition is laid down was one in which the defect complained of, consisted of the failure of the clerk of the county court to note in his office the day on which the sheriff returned his list of the sales of lands sold for delinquent taxes. The question there under discussion did not involve any violation of section 9 of chapter 31. That case was within the curative provision of section 25 of chapter 13. It was not a question of a *prima facie* violation of said section 9, such as forms the basis of the opinion delivered by Judge Holt in the case of *Phillips* v. *Minear*. It seems from the reading of that case that it may have been thought that the presumption of the violation of section 9, arising from the omission of a material part of the affidavit, might be rebutted. However, no reason is perceived why different rules of evidence should be applied in these two cases. The evils pointed out by Judge Snyder as certain to result from permitting the introduction of oral testimony in such case as was then under consideration, would just as certainly flow from permitting it in this case. In *Jackson* v. *Killle,* 34 W. Va. 207, Judge Lucas, delivering the opinion of the Court, said of the same defect we have here, "It is such a defective execution of the demand and intention of the amended statute as to amount to no affidavit at all; and we may discuss the importance of the omission as if the sheriff had appended no affidavit whatever to his list of sales. He quotes approvingly the following from Blackwell on Tax Titles, 304, "Where the law requires the officer who made the sale to return a history of his proceedings, it must be done at the time and in

the manner prescribed or the sale is invalidated. The returns. must show the description of the land, the name of the purchaser, the time of the sale, and all other particulars connected with it, which the law requires." In *Jones* v. *Dils,* 18 W. Va. 759, Judge Johnson said, "Now, if there are omitted from the list some of the positive requirements of the statute can it be called a mere irregularity which will not affect the sale? To say that the legislature has enacted that certain proceedings are necessary to the validity of a sale of real estate for taxes and, at the same time, to say that the omission of any of said proceedings is mere irregularity is absurd. If any of such provisions may be omitted, why not all?" In view of these propositions, it seems clear that an affidavit from which one of the positive requirements of the statute has been omitted, a requirement intended to enforce obedience to a positive and mandatory provision of the statute, is such a defect as cannot be cured, without regard to the question, whether oral evidence may be introduced to show that the section of the statute in question has not been violated and that the affidavit as required by law could have been made. It seems clear that an affidavit requiring such essential and mandatory declarations are just as essential to the validity of a tax deed as would be the signature of the vendor to the validity and existence and due execution of a deed made by any person in his individual capacity. Section 9 of chapter 31 prohibits the sheriff from being interested in the purchase of any land sold by him either at the time of the sale or at any other time, directly or indirectly, and provides that in case of violation of that section the sale of the land in respect to which such violation has occurred shall be void. Such omission as has occurred in the affidavit in question here must be treated, therefore, not as an irregularity, but as a fatal omission.

This being decisive of the case, it is practically useless to consider the other alleged defects. However, it may well be doubted whether any of them are such as would invalidate the deed. In the form prescribed by the Code the words "acres" and "fractions" are not inserted in the columns in which the quantity of land is required to be entered. The letter of the statute has not been violated in this respect and no person of ordinary intelligence is likely to be mislead by such an omission. That the name of the district and local description of the land are not placed in their proper columns are mere irregularities and not

calculated to mislead or prejudice any person who would exercise even ordinary judgment and caution. The failure to carry in the list a lot of vacant columns or spaces in which there was nothing that could be entered could hardly be considered an irregularity. The district taxes seem to have been all put in one column, the district taxes proper, the school district taxes and the independent school district taxes.

The only remaining question is whether a sufficient tender was made by the plaintiff. That there was a tender there is no doubt. Immediately before the suit was brought the attorney for the plaintiff went to the defendant for the purpose of redeeming the land, took him to the bank with him, drew thirty dollars from the bank in legal tender notes and offered that amount to the defendant. He refused to accept it and the attorney says he then offered to pay him any amount that he was entitled to. Batton declined to accept it. He admits that three ten dollar bills were tendered him and that he refused to receive the money. He says in his deposition that he claimed the land as his own, after he received the deed, and had no right to give it up. The amount of taxes paid by him up to and including the year 1898 on the land is nine dollars and eighty-one cents. The clerk's fee for making the deed, recording it, and the report and plat by the surveyor and transferring the land amounted to eight dollars and twenty-five cents. The amount to which the surveyor is entitled is not ascertained, but it is clear that the thirty dollars was amply sufficient to redeem. No case is recalled in which it has been held by this Court that it is necessary to bring the money into court after a tender has been made and the holder of the tax deed has declined to accept the money. "The person seeking to redeem land sold for taxes should make a legal tender of the proper amount of actual lawful money; but that will be excused if the purchaser place his refusal, not upon the non-tender of actual money, or because the amount is not the proper amount, but on the distinct ground that the party offering to redeem has no authority or right to do so." *Poling v. Parsons,* 38 W. Va. 80; *Koon v. Snodgrass,* 18 W. Va. 320. Here the tender is alleged in the bill and sustained by proof not only that a sufficient amount was tendered but that the defendant based his refusal upon grounds other than insufficiency or incorrectness of the amount and, therefore, tender of the actual

amount due is excused. The deed should not be set aside, however, without requiring payment of the redemption money.

The authorities cited in *Morris* v. *Roseberry et als.*, 46 W. Va. 24, show that, in all such cases as this, equity requires the plaintiff to tender to the holder of a defective tax deed the taxes paid by him as a condition precedent to its entertaining jurisdiction. Invalidity of the deed furnishes no ground for relieving the owner of the land, or the person entitled to have the deed set aside, from the payment of the taxes thereon. That is a duty he owes to the public and he has no equitable right to cast it upon some other person. Batton's purchase of the land and payment of the purchase-money and taxes were voluntary acts, but they were induced by the fault of the owner of the land in failing to pay the taxes. He who seeks equity must do equity. But there is an express statutory provision in section 25 of chapter 31 of the Code, declaring that "No deed for any real estate sold under the provisions of this chapter shall be vacated or set aside in whole or in part by reason of any mistake or irregularity in the proceedings of record as aforesaid, unless and until the person entitled to have the same so set aside, shall pay or tender to the purchaser, or his heirs, devisees or assignee, or the person holding under him, or some one or more of them, the purchase-money paid for said real estate at the time of the sale thereof, and all the taxes since paid thereon for any year or years for which such person so claiming, or those under whom he claims, have not paid taxes thereon, and the costs of the survey or report made as hereinbefore required, with interest on each sum from the date of the payment thereof to the time of such payment by the person so claiming."

It will be noticed that this statute says the person entitled to have the deed set aside "shall pay or tender to the purchaser the money." Is it enough that the amount be tendered only? Is the person entitled to have the deed set aside not bound to keep the tender good? "Tender is an offer to perform an act which the party offering is bound to perform." 25 Am. Eng. Ency. Law, 897. "A tender of money which is unaccepted is not equivalent to performance, and does not satisfy or extinguish the obligation, nor bar an action upon it." *Id.* 924. The only seeming exception to this rule is that a tender of the full amount of the debt secured by a lien upon property discharges the lien. *Id.* 927, 931; 2 Jones on Mort. s. 891. But in these cases the

tender is not equivalent to payment of the debt and does not discharge the debt although it does discharge the lien. It does not pay the debt but releases the property. In such case the tender is equivalent to payment as to all things which are incidental and accessorial to the debt, such as cost, interest, and security for it by lien upon property. The creditor, by refusing to accept, does not forfeit his right to the thing tendered, but he does lose all collateral benefits or securities. The instantaneous effect is to discharge any collateral lien, as a pledge of goods or a right of distress. *Kortright* v. *Cady*, 21 N. Y. 343; 78 Am. Dec. 145. That is the effect of such a tender at law. Where the amount due under the mortgage is tendered, in those states in which a mortgage is held to be a mere security for money, the lien is immediately discharged in contemplation of law and the mortgagor is entitled to possession of the land. But tender does not have that effect in equity, at least not ordinarily. "It is generally held that the lien of a mortgage or pledge is discharged by a tender of the full amount due, and in those states where a mortgage is held to be only a security, a tender has this effect when made at any time prior to foreclosure, although after the law day; so that payment into court is not essential to the plea of tender. But even in those states where the latter rule prevails, it is necessary that a mortgagor should pay the amount tendered into court, if he comes into equity for affirmative relief such as cancellation of the mortgage." 21 Ency. Pl. and Pr. 573. In some jurisdictions it is held that it is not always necessary to pay the money into court upon the filing of the bill, and that such payment may be provided for by making the decree conditional thereon. *Id.* 575. The rule in this State is that a bill to redeem a mortgage must allege and rely upon the tender, if one is claimed, and the money must be paid into court. *Shank* v. *Groff,* 45 W. Va. 543. The same rule applies at law in this State. *Gilkeson* v. *Smith,* 15 W. Va. 44. Suits to set aside tax deeds form no exception to the rule. "Whenever taxes paid by a purchaser at a tax sale are a just charge upon the property sold, but the tax sale or deed is invalid because of irregularities in the proceedings by which the property has been subjected, the owner is required to pay such taxes before he can proceed to question the title of the purchaser; and in a suit for relief against such void tax sale or deed to remove the cloud and quiet the title the release will be conditioned upon the reimbursement

of the defendant in the amount necessary under the law to redeem the property. And where the plaintiff attacking the validity of a tax title avers a readiness and willingness to pay such amount, it is error for the court to render judgment setting aside the tax sale without requiring the payment of the sum tendered." 21 Ency. Pl. and Pr. 494; *Winning* v. *Eakin,* 44 W. Va. 19. The question is not extensively discussed in *Winning* v. *Eakin* for the reason that there were other errors sufficient to reverse the decree, but the principle is there mentioned by Judge Brannon. This is not a mere statutory requirement, for it is put upon a broader ground. "Whenever the owner seeks in a court of equity to have a tax deed set aside, and the cloud created thereby removed from his title, the familiar maxim, "He who seeks equity must do equity," will be applied, and he will be required to pay the amount for which the land was sold, and all subsequently paid taxes, with interest, as a condition to relief." 25 Am. & Eng. Ency. Law, 735, citing numerous cases.

The bill in this case alleges that tender was made, but that tender has not been kept good. It is only alleged that a tender was made. The plaintiff does not offer in his bill to pay the purchaser the purchase money and the taxes and cost subsequently paid by the purchaser. He does not even express a willingness to pay, nor an offer to pay. He proceeds upon the idea that having tendered the money and the defendant having refused it, he is under no further obligation to pay. He brings no money into court, and the court in its decree does not make the setting aside of the deed conditional upon his paying the money.

For these reasons the bill is bad, insufficient in law, and the demurrer should have been sustained, and the court having erred in that respect the decree setting aside the deed and the action of the court in overruling the demurrer must be reversed and the demurrer sustained. But, as the plaintiff has made out a case, which, upon a proper bill, would entitle him to relief, he must be permitted to amend his bill by sufficiently pleading the tender which can only be done by offering to pay the purchase-money, taxes, and cost, and bringing the money into court. That leave to amend may be given on reversing a decree in a case in which the proof shows good cause for relief upon the general cause of action set up in the bill, but the allegations of the bill are insufficient, is well settled. *Lamb* v. *Laughlin,* 25 W. Va.

300; *Fenno* v. *Coulter,* 14 Ark. 38; *Lane* v. *Lane,* 87 Ga. 268; *Barrett* v. *Sargeant,* 18 Vt. 365; *Lewis* v. *Darling,* 16 How. (U. S.) 1; *Eckord* v. *Halbert,* 30 Miss. 273; *Church* v. *Holcomb,* 45 Mich. 29.

The decree setting aside the deed and the order overruling the demurrer must be reversed and the cause remanded with leave to the plaintiff to amend his bill, if he so desires, and then to be further proceeded with according to the principles herein announced and the rules and principles of equity, and the appellant must recover his costs in this Court expended.

*Reversed.*