NATIONAL BANK OF COMMERCE *et al. vs.* FRANCIS M. SMITH
*et als.*

A testator created a testamentary trust for the purpose of giving, through the trust, credit to his business firm and to certain corporations in which he was a stockholder. The trustees had full power to sell, mortgage, and pledge, to pay the testator's debts, or to secure or to extend them; to indorse the paper of the firm, or of the corporations, and to use the trust estate to retire old debts of the firm or of the corporations, or to create new ones. The trust was to last ten years, at the end of which time the property was to be distributed discharged of the trust " according to the devises and bequests " of the will.

*Held*, that the ten years limited the time within which the trustees could charge the trust estate.

*Held*, further, that the trustees had an implied power to sell after the expiration of the ten years.

*Held*, further, that sales of the trust property, made by the trustees after the expiration of the ten years, were valid.

Of those who became creditors under this trust, some enforced their claims by judgments against the trustees in their individual capacities, others did not.

*Held*, that as against the trust estates the creditors who took judgments had by reason of such judgments no prior nor superior rights over creditors who had not taken judgments.

The trust was created " subject to the devises and bequests and charges for payments hereinbefore made," among which was an annuity to the testator's widow.

*Held*, that the widow's annuity was a first lien on the trust estate ; that the trust must continue during the widow's life, unless her annuity could in some way be terminated ; that the trustees had power to sell to pay this annuity, these charges, and the expenses incident to the care of the trust estates ; that the trustees should, however, retain productive property and sell off the unproductive.

Trustees sold realty, which had been devised to them in trust " subject to the devises and bequests and charges for payments " previously provided for in the will, and applied the proceeds to the reduction of such charges.

*Held*, that the application of the purchase-money was properly made.

Creditors who for ten years have assented to a testamentary trust cannot by then disaffirming it charge the purchasers who bought from the trustees prior to such disaffirming.

When power is given to trustees to sell the trust estate, not for a particular or definite purpose, but for the purposes of the trust generally, a purchaser from them is not bound to see to the application of his purchase-money paid.

Amendments to a bill in equity which abandon the case originally made by the bill, and substitute a new one, are not permissible, especially when not proposed until after the case originally made has been heard.

BILL IN EQUITY to establish a lien and for an account. On demurrer to the bill, and subsequently on the sufficiency of the plea. Then heard on bill, answers, and proof.

Amos D. Smith, of Providence, died January 21, A. D. 1877, leaving a last will and testament, which was duly proved, Feb-

ruary 20, A. D. 1877, before the Probate Court of the city of Providence, and is as follows : —

### IN THE NAME OF GOD. AMEN.

I, Amos D. Smith, of Providence, in the County of Providence and State of Rhode Island, merchant, being of sound and disposing mind and memory, and yet mindful of the uncertainty of human life, do make, ordain, and declare this my last will and testament.

I direct my just debts and funeral expenses to be paid, except as hereinafter provided in the trusts herein created.

I give, devise, and bequeath to my beloved wife, Amey A. Smith, my lot of land fronting on Hope Street and on the south side of George Street, running back on George Street one hundred and twenty-five feet, and on Hope Street about one hundred and thirteen feet, to her, her heirs and assigns, forever. I also give her absolutely all my furniture, paintings, statuary, and other works of art, and all the articles belonging to me of a household nature, whether contained in my house on the corner of George and Hope streets, in the city of Providence, or in my house on my farm in Portsmouth; also, my silverware wherever it may be stored, my square pianoforte (the grand piano belonging to my daughter Amie); also, all my horses, carriages, sleighs, harnesses, and articles connected therewith, wherever the same may be; also, I give to my beloved wife the sum of thirty thousand dollars in cash in her own right, and I also wish here to acknowledge that my beloved wife owns in her own right one third of the Field's Point Farm; also, certain shares standing in her name in the Bank of Commerce in Providence, also shares in the Providence Gas Company; also, a balance due from me to her, as appears on my books, and a landed estate in the town of Simsbury, Connecticut; and, to make this acknowledgment and her title thereto the more certain, I hereby devise and bequeath all my right, title, and interest that I may have in the same, and in each and all of the same, to her, her heirs and assigns, forever and absolutely.

I also give, devise, and bequeath to my beloved wife the use for her lifetime of my homestead estate in Providence, bounded on George, Hope, and Cooke streets, and all the improvements thereon,

also, the use to her during her lifetime of my residence in Portsmouth, with the garden, buildings, and grounds, with as much more land, including the gate and gate house, as will make forty acres more, my said wife to select said forty acres, and to draw the boundary line thereof between said tract and the remainder of said estate, as she may see fit.   And I further charge the rest of my estate with, and hereby direct, that the repairs, insurance, and taxes upon said estate given to my wife for her lifetime, shall be paid out of the rest of my estate, and shall not be chargeable to her separate estate.

I also give and bequeath to my beloved wife the sum of six thousand dollars annually, to be paid to her at such times and in suĉh sums as may be desired by her so long as she shall live.   The above devises and bequests to my beloved wife to be in lieu of her dower or other rights in my estate, and to be received by her upon this condition.

And I further give to my beloved daughter, Amie, the sum of two thousand dollars, to be paid to her annually during her life, the same to be chargeable upon my estate herein devised and bequeathed in trust.   Said annuities of six thousand and of two thousand dollars to be the first charge upon said trust estate prior to the trusts thereof.

Whereas, I am a member of the firm of A. D. Smith & Company, and I am also a stockholder in the following manufacturing companies, to wit : the Franklin Manufacturing Company, the Groton Manufacturing Company, and the Providence Steam Mill, and am indorser for said companies as a member of the firm of A. D. Smith & Company and otherwise, and liable for the debts of said companies, and whereas it may be desired that said companies shall have the benefit of a continuation of such indorsement and liability, I hereby give, devise, and bequeath all my property not herein otherwise disposed of, and all my property subject to the devises and bequests and charges for payments hereinbefore made, to Francis M. Smith and Charles Morris Smith, their heirs and assigns, and to the survivor of them, as joint tenants forever.   To have and to hold the same in trust ; to take and have possession of all said trust estate, and to have charge of the same, and to manage the same, in their and his absolute and uncontrolled discre-

tion as they or he may deem for the best interests of all concerned; at any time, or from time to time, to convert the same or any part thereof into money, and either before or after such conversion to apply or use the same, or any part thereof, to or for the payment or to or for the securing extension or retiring of the debts, liabilities, or obligations, primary or secondary, or any or either of them, outstanding at the time of my decease against me, either as partner or corporator, or individually, or as surety, indorser, or guarantor, whether as partner or individually, or however otherwise contracted or incurred, or which may have been or may be incurred for the purpose of carrying on or aiding and assisting the business of the Groton Manufacturing Company and the Providence Steam Mill and the Franklin Manufacturing Company, or of either of them, such liabilities being, and being intended by me to be, in the future under this trust and chargeable upon said trust estate for the full amount of the obligations of said companies, or either of them, if desired by the creditors thereof, and subject, as between the stockholders therein, to contribution, and also of the debts, liabilities, and obligations of any kind, primary or secondary, or any or either of them, which may from time to time be contracted or incurred by said trustees or trustee for the time being, while acting, or purporting to act, under these trusts.

I also authorize and empower my said trustees or trustee for the time being to renew, make, indorse, guarantee, or enter into any note, bill, or negotiable paper, bond, obligation, or contract of any nature, as principal, indorser, guarantor, or surety, whether for the benefit or accommodation of said corporations, or either of them, or of the firm of A. D. Smith & Company, or of said trust estate, and all such undertakings and engagements or accommodation made or entered into by said trustees or trustee for the time being shall be as binding upon said trust estate as if made or entered into directly by me in my lifetime, and any holder thereof may by any appropriate suit or proceeding at law or in equity enforce the same or payment thereof against or from said trust estate, and it shall be no objection to any such suit or proceeding that other creditors, or any other person except said trustees or trustee for the time being, are not joined or made parties thereto; and it is further declared that it shall be lawful for

said trustees or trustee for the time being, at any time, or from time to time, to make such improvements by building or otherwise upon the real estate as they or he may deem proper, and to keep the buildings and improvements on said trust estate in good repair and insured against loss by fire, and to receive and collect all the rents and income of said trust estate and for said trustees or trustee for the time being at any time, or from time to time to make partition of any estate held by them as tenants in common with any other person, or to sell at public auction or by private contract in fee simple or otherwise, or to mortgage or pledge free of all trusts any part or parts of said trust estate, real or personal, and with or without covenants or warranty of title, powers of sale, or of other covenants or agreements, and to enter into contracts in respect to the said trust estate, and to vary or rescind the same, and to buy in and resell, without being accountable for any resulting loss, as they or he may see fit, and all moneys received under the trusts hereof after paying all taxes and other expenses attending said trust estate and the care thereof, and the execution of the trusts hereby created, to apply to any of the purposes of these trusts, or to reinvest as said trustees or trustee for the time being may deem expedient, with power from time to time to alter or vary any of the investments or reinvestments thereof, or of the said trust estate, as they or he may think best, and no purchaser, mortgagee, pledgee, or other person dealing with said trustees or trustee for the time being, shall be under any obligation to inquire as to the necessity, regularity, or propriety of any sale, mortgage, pledge, or other act or transaction whatever, made or done or entered into by said trustees or trustee for the time being, or to see to the application of any purchase-money or other moneys realized or arising therefrom, or be in any wise affected by notice that the same are or is not made or done, or the moneys not applied for the purposes of said trust.

And I further authorize either of my said trustees by and with the written consent of the other of said trustees first then to be obtained to make or indorse any negotiable paper or other paper which said trustees are hereby authorized to make or indorse. And I further appoint and declare that the within trust may continue for the period of ten years from the time of my decease

and no longer, and that in the case of the death, resignation, removal, or disqualification of either of said trustees, the power vested in said trustees shall and may be exercised by the remaining trustee, and that any vacancy in said trust may be filled by an appointment made by the remaining trustee and the executrix of my will or by the court.

And upon the termination of said trust at the expiration of the term aforesaid of ten years from my decease, or upon other termination thereof after the discharge of my liability or the liabilities of my estate other than as corporator as herein provided for the debts of said corporations, and by the consent and agreement of all the *cestui que trusts* or their representatives hereinafter set forth, I direct that the trust fund and estate shall be distributed and divided, and that said trustees shall convey the same discharged of said trust as follows and according to the devises and bequests herein made; that is, I give, devise, and bequeath to my children, Hannah C., Henry J., Francis M., and Amos D. Smith, Jr., share and share alike, all my interest in the property of the Franklin Manufacturing Company.

I also give, devise, and bequeath to my children, Charles M., Amie B., and George M., share and share alike, all my interest and property in the Groton Manufacturing Company, the interest and fee in these properties to be given absolutely and forever to the children aforesaid respectively. But I further direct that an appraisal at the time of distribution be made of each of said properties, and if it be ascertained upon such appraisal that any of my said children would have received more in appraised value under this clause of my will than any of the others, then the difference between such values to be made up to the children receiving the smaller value otherwise out of my estate. And I hereby give and bequeath a sufficient sum of money out of my estate to make up such deficiency, said distribution and appraisal to be made at the termination of said trust.

And I further direct and appoint that the remainder of said trust property and estate shall be divided and conveyed by said trustees, at the termination of said trust as herein provided for, among my said children in fee and absolutely discharged of said trust, share and share alike.

In case of the decease of either of my said children without leaving a last will and testament or instrument in the nature of a last will and testament, and also leaving children, then such parent's share shall go to said children. All the estate devised and bequeathed to my children to remain subject to the charges of this my will in favor of my wife and my daughter Amie.

I further appoint my beloved wife my sole executrix of this my last will and testament, and direct and request that she shall not be required to file an inventory of my estate, or to give bonds as executrix or administratrix thereof.

In testimony whereof, I have hereunto set my hand and seal the ninth day of December, in the year of our Lord one thousand eight hundred and seventy-six.

AMOS D. SMITH.   [L. s.]

Signed, sealed, published, and declared by the said Amos D. Smith as and for his last will and testament, in presence of us who at his request in his presence and in the presence of each other hereto subscribe ourselves as witnesses.

C. S. BRADLEY,
C. BRADLEY,
JOHN H. BERRY.

The complainants, judgment creditors in a series of suits of which one, *Roger Williams Nat. Bank* v. *Groton Manufac. Co.* 16 R. I. 504, is an example, filed this bill in equity to subject the trust estate to the payment of their claims. It appeared from the answers of the trustees that certain realty had been sold and conveyed to the city of Providence and to one Hodges more than ten years after the death of the testator, whereupon the complainants amended their bill, made the city of Providence and Hodges parties respondent, and prayed that the land sold to them might be subjected to the complainants' claims, and "be sold under the decree of this court, or that said city of Providence and Hodges . . . might account for and pay over to these complainants . . . the purchase-moneys thereof."

To the bill so amended the city of Providence demurred.

*Nicholas Van Slyck*, City Solicitor, & *Cyrus M. Van Slyck*, Assistant City Solicitor, in support of the demurrer.

Was the sale of the trust property after the expiration of the period of ten years beyond the powers of the trustee?

1. The ten year limit applies only to the power to obtain extension of old credits and to procure new credits, and not to the power to sell or mortgage for the purpose of securing funds to discharge trusts already fastened upon the property.

The real trust confided to the trustees was the carrying on the business enterprises of the testator by means of securing credits.

The language of the will is, that the " *trust* may continue for the period of ten years and no longer ; " nothing is said as to the *power.*

If the trusts, or any part of them, are held to have survived the limitation, the powers incidental to that trust survive. *Pearce* v. *Gardner*, 10 Hare, 287.

It is not conceivable, that, where the powers were so carefully elaborated, it was the intention of the testator that a trust should be created which might survive the period of limitation, and the trustee be deprived of those powers which the testator conceived essential for the proper consummation of his purpose in creating the trust. If the power survived, with it survived all its incidents. It would be inequitable, moreover, that the residuary distributees should be deprived of the right to have the estate settled to the best advantage, because the trustees neglected to settle the estate prior to the expiration of that period.

In effect, the complainants, in this case, are contending that, although they claim under this trust clause, a portion of this clause, which they now deem disadvantageous to themselves, should be wiped out, and they put in a better position than the testator ever intended, and at the expense of innocent parties, because the trustees neglected to exercise the powers conferred upon them within the time directed.

2. If there was a charge for the payment of debts, although no express powers were given, yet a power to sell would be implied. *Robinson* v. *Lowater*, 5 De G., M. & G. 272; *Eidsforth* v. *Armstead*, 2 Kay & J. 333; *Colyer* v. *Finch*, 5 H. L. 905; *Greetham* v. *Colton*, 34 Beav. 615.

If this is not so, this court has no power to decree a sale of any of this trust property. Pub. Stat. R. I. cap. 178, § 7.

3. There is another ground upon which a continuance or survival of the power may be predicated.

A power coupled with an interest is irrevocable, although by the donor declared to be revocable. 2 Washburn on Real Property, 4th ed. 651–663. The bill shows that the trustees accepted the trust, and made and indorsed negotiable and other paper and obligations in pursuance of that trust. They thereby became personally liable on these obligations. *Roger Williams National Bank* v. *Groton Manuf. Company*, 16 R. I. 504. They are then entitled under certain circumstances to be reimbursed from the trust property if that liability should be enforced, *i. e.*, they have an interest in the trust property.

Was the city as a purchaser bound to see to the application of the purchase-money ?

*a.* If the power and its incidents survived the period of limitation, by the express terms of the trust, there was no such obligation.

*b.* If it should be held that the land immediately previous to the conveyance to the city was subject to a charge or trust for the payment of debts, then there was no such obligation.

Where there is a charge or devise for the payment of debts generally, a purchaser is not bound to look to the application of the purchase-money. Story Equity Juris. §§ 1130, 1131; *Lewin on Trusts*, *456, and note; Perry on Trusts, 4th ed. § 795; *Forbes* v. *Peacock*, 11 Sim. 152, 12 Sim. 528, 1 Phillips, 716, 721; *Stall* v. *Cincinnati*, 16 Ohio St. 169; *Goodrich* v. *Proctor*, 1 Gray, 567, 570; *Potter* v. *Gardner*, 12 Wheat. 498.

The reason for the rule seems to be the difficulty, if not impossibility, that the purchaser should be able to ascertain who would be entitled to receive the money. As has been said, it would necessitate an examination and knowledge of the entire business of the testator.

The reason of the rule appeals strongly to us in the case at bar.

In this country the tendency is to abrogate entirely the requirement that a purchaser should see to the application of the purchase-money. The English rule imposing that duty on a purchaser where the charge is for specified debts "is not favored by the American courts, although they apply the doctrine where it cannot be avoided." Perry on Trusts, 4th ed. § 798, and notes.

The bill does not allege that the trustees did not apply the purchase-money in accordance with the terms of the trust.

The complainants' equity, if any, against the city must be founded upon misappropriation of the purchase-money. The only averment in reference to this is that the trustees "have applied the proceeds of the same, but in what way your said complainants have no definite information, but the same or any part thereof has not been applied to the payment of the debts of said complainants."

The bill shows that the charges upon the trust estate in favor of the testator's widow and of his daughter Amie are prior to the trusts in favor of creditors. It should show further, if the complainants would maintain this suit against this defendant, that the proceeds have not been applied to these charges of an equity superior to that of the plaintiffs.

*John T. Blodgett, Joseph C. Ely, James Tillinghast & Thomas C. Greene,* for the complainants *contra.*

The anatomy of the will of Amos D. Smith discloses a backbone, a purpose to give all his property in certain shares to his children. But attached to this are two appendages: First, he desires to provide for his wife and unmarried daughter Amie. These he provides for by annuities, etc., charging the same on the corpus of his estate, but furnishing no machinery by which such charges should be worked out, outside of a court of equity. But more pressing, though not more favored, were the claims of creditors. These he determines to provide for by a trust with powers and the continuance of his business for a period of ten years from the time of his decease *and no longer.* Now to keep these creditors, and others who might after his decease become creditors, contented to forbear from pressing their claims, he makes such claims "chargeable upon said trust estate" so created. And again, as to liabilities thereafter incurred, he says the same "shall be as binding upon said trust estate as if made or entered into directly by me in my lifetime," evidently intending by the latter clause to give a liability like that of the statute. Pub. Stat. R. I. cap. 139, §§ 13, 14.

That the word "chargeable" must be assumed to create a direct charge upon the corpus of the trust estate is evident from the context of the will. If there could be any reasonable question upon it, see the only reported case of this kind which has been found where the word "chargeable" is used. *Jones* v. *Walker,* 103 U. S. 444–446.

This trust was to last for the period of ten years from the decease of the testator, *and no longer.*   See will: " And I further appoint and declare that the within trust may continue for the period of ten years from the time of my decease, *and no longer.*"

Amos D. Smith deceased January 21, 1877, and the ten years' term above specified for the duration of said trust ended with the 20th day of January, A. D. 1887.   The trustees executed a conveyance to the city of Providence on March 28, 1888 (after the expiration of said ten years), of a portion of the Field's Point Farm, and for which the city paid the trustees $45,748.10, no part of which sum has been applied by said trustees to the payment of the debts due the complainants.

The complainants maintain that the trustees had no power to make said conveyance after the expiration of said ten years, viz., after January 20, 1887, and that accordingly this land should be declared either to be still subject to a charge in favor of the complainants, or that the city shall be declared to account to the complainants for the purchase price thereof.

See *In re Cotton's Trustees and the School Board for London,* L. R. 19 Ch. Div. 624, 627, where Mr. Justice Fry, delivering the opinion of the court, stated the law as follows: —

" Accordingly it is well ascertained that when there is a settlement of real estate, either by will or by deed, and the settlement ultimately carries the land to a person entitled in fee simple, and there are powers couched in general words and without limitation as to time, which are nevertheless obviously *intended* to be exercised only during the subsistence of the intermediate limitations, then, the moment the estate in fee is vested, the powers are at an end, because it was the intention of the settlement that they should subsist only during the intermediate limitations, and therefore in that case the vesting of the estate absolutely in the persons ultimately entitled is an indication that according to the true construction of the settlement, the intention of the settlor with regard to the premises has come to an end."   See, also, Lewin on Trust, * 605, *606.

This point seems to be so self-evident that in cases of this kind no question seems to have been directly raised upon it.

The trustees then had only an estate for ten years.   It has

ended, and with it all powers. The power of sale and the other powers were only given as incidental to carrying on the business within the ten years. It is only necessary to refer to them to prove the point.

In order to fully understand the cases where the testator has directed his business to be carried on (which cases, by the way, are not at all numerous), it must be borne in mind that the most of them do not involve the question of a direct charge, and consequently the equity of the creditor must be worked out through the equity of the executor or trustee for reimbursement. Though Lord Eldon said in *Ex parte Garland*, 10 Ves. Jun. 109: "They" (the creditors) "have something very like a lien upon estate embarked in the trade."

Yet the subsequent cases rest the equity of the creditor on that of the trustee or executor, as to which, see the late cases *In re Johnson, Shearman* v. *Robinson*, L. R. 15 Ch. Div. 548–552; *In re Gorton, Dowse* v. *Gorton*, L. R. 40 Ch. Div. 536–540; *Mason* v. *Pomeroy*, 24 North Eastern Reporter, 202.

But this is not a case like those. Nor is it a case where the ordinary rule as to seeing to the application of the purchase-money is applicable. It is a case of a direct charge. At the end of the ten years the trust property was directly incumbered as by a mortgage. What was incumbered and the incumbrance itself were then ascertained, and the same definitely fixed. To allow any interference of the trustees after that time is to put a mortgage incumbrance in peril of losing its lien. All parties, defendants, the trustees, and the corporations, are admitted to have been insolvent, an additional reason why such matters should be settled by the impartial hand of a court of equity. Had it not been so considered, the creditors would never have tolerated any extension. This has been the contemporary construction of said will by all parties. It thus was a question of prior equity when the property was sold to the city of Providence.

The city buying from the trustees was charged with notice of the will. *Peck* v. *Bank of America*, R. I. 16 R. I. 710. And having such notice by construction took only an interest, subject to the prior equities of such creditors. *In re Margan, Pillgrem* v. *Pillgrem*, L. R. 18 Ch. Div. 93.

" When a will makes the payment of the debts a charge on the land, the purchaser will be bound to see that the purchase-money is so applied, or the land purchased by him may be sold at the instance of the creditors." *Brown* v. *Logan's Adm'r*, 7 South Western Reporter, 398.

This question, though not so common in case of direct charge of debts, is a matter often decided as to legacies, and the principle is the same. See *Pickering* v. *Pickering*, 15 N. H. 281, 292, 293 ; *Sheldon* v. *Purple*, 16 Pick. 528 ; *Newman* v. *Kent*, 1 Meriv. 240 ; *Shackleton* v. *Shackleton*, 2 Sim. & Stu. 242.

This demurrer should not be sustained in the face of such culpable neglect on the part of the city as it is by such demurrer confessed.

*February* 14, 1891. PER CURIAM. The question is, whether the trustees under the will of the late Amos D. Smith had power, more than ten years after his death, to sell and convey a portion of the trust property. The purpose of the trust, as declared by the testator, was to have the trust property used to give credit and pecuniary aid to a partnership of which he was a member, and to three manufacturing corporations in which he was a stockholder, in order that they should not suffer by the loss of his indorsement and guaranty and personal liability. Accordingly, the property was put in trust to be used to pay, secure, or extend the debts and liabilities outstanding against him at his decease, and as a basis of credit for the creation of new debts and liabilities by the trustees to take the place of them ; unlimited power to sell and convey, mortgage or pledge, the property discharged of the trust being conferred upon them, and also a variety of incidental powers for its management and improvement. The language of the clause in which the trust is declared is exceedingly involved, complicated, and in some respects difficult to understand, from lack of clearness and completeness of declaration. It is provided that the trust " may continue for the period of ten years from the time of my, the testator's decease, and no longer." The contention is, that the sale of the city of Providence, having been made after the ten years expired, was invalid. There are two considerations that make strongly against this view. One is, that the trustees have authority to go on renewing their liabilities and incurring new ones on the credit of the property and in the full exercise of all

the powers given them for that purpose, until the expiration of the ten years; and if instantly at the expiration of that period the trust and all their powers as trustees determine, both their own interests and the interests of the creditors will be very ineffectually protected. It is not easy to believe that this was intended. But, again, it is provided that, upon the termination of the trust, the property shall be distributed and divided, and that the trustees shall convey the same discharged of said trust, as the same is devised and bequeathed in the will. But how can the trustees convey it " discharged of said trust," that is, of all liabilities attaching to it under the trust, unless the trustees have power to raise money for the payment of such of them as continue unpaid after the ten years have expired. It seems to us that the more reasonable construction is, that the ten years were allowed for the continuance of the trust for the purposes for which it was created; namely, to give credit and pecuniary aid to the partnership and the corporations, and no longer for that purpose, but that by necessary intendment the trust must continue with the powers necessary for the winding up of its affairs and the discharging of the property, so that it may be conveyed " discharged of said trust " to the devisees and legatees entitled under the will to have it so conveyed to them. In other words, we think that the word " trust " in the provision for its termination was used to signify the trust as a contrivance for giving aid and credit to the concerns aforesaid, and that in that sense the trust and the powers of the trustees were to terminate.

We are free to say, however, that in giving this construction we do so with so much doubt that we hesitate to commit ourselves to it as final at this initial stage of the trial; seeing that there are parties who have not yet been heard, and that subsequent proceedings may bring light which may modify our opinion. We will, therefore, pursue in this case the course pursued in regard to the somewhat similar matter in *Lynch* v. *Briggs*, now pending in this court, that is to say, we will overrule the demurrer without prejudice to the city, but at the same time reserve our final conclusion until after further hearing.

*Demurrer overruled without prejudice.*

The city of Providence, one of the respondents, after its de-

murrer had been overruled, filed a plea, which the complainants set down for argument.

*November* 28, 1891. MATTESON, C. J. This cause is before us on the question of the sufficiency of the plea of the city of Providence to the amended bill. The plea sets up in bar to so much of the bill as prays for discovery and relief from the city of Providence, that at the time the trustees sold and conveyed to it the real estate referred to in the amended bill, and that it paid therefor the sum of $45,048.10 to the trustees, there was due from them to Amey A. Smith, the widow of the deceased, a much greater sum on account of the annuity provided for her in his will, and that the sum thus due and owing to her was by the terms of the will a charge and lien upon the estate so sold and conveyed, prior to, and of a higher nature than, the liens of the complainants, or any of them, and that the sum so paid to the trustees by the city of Providence was needed for, and was wholly applied to, the payment in part, and in reduction, of such lien and charge for such annuity.

We think the plea is sufficient.

The complainants object to its sufficiency because, as they claim, the provision for the annuity in lieu of dower gives to the widow no lien superior to their rights as creditors. If these complainants had not accepted the provisions of the trusts created by the testator in their favor, and were proceeding against the widow, legatees, and trustees named in the will, to enforce the statutory lien for the payment of their claims, notwithstanding the provisions of the will, there would be force in their claim. The cases which they cite are of that nature; but such is not the nature of the present bill. This bill is framed upon the theory that the trust created by the will had terminated at the expiration of the ten years limited in the will for its continuance, and that the powers of the trustees, including the power to sell the trust estate, had ceased upon the termination of the trust. At a former term we held that though the trust, so far as it related to the incurring of obligations by the trustees so as to charge the trust estate, expired with the ten years so limited, yet it continued for the purpose of enabling the trustees to wind up its affairs, and that they had an implied power to sell and convey the trust property for the purpose of discharging the liens and claims for which it was charged; since they could not

otherwise convey the portions of the trust estate not required for that purpose to the devisees and legatees entitled under the will to such portions, "discharged of said trust," as directed by the will. By the terms of the will the annuity in favor of the widow was made a lien upon the trust estate superior to any lien arising under the trust, and the estate conveyed to the trustees was expressly made "subject to the devises and bequests and charges for payments," previously made in the will. Among the charges for payments, to which the devise and bequest of the trust estate was thus made subject, is the annuity to the widow. The complainants refer to a subsequent clause in the will to the effect that all undertakings, engagements, and accommodation made or entered into by the trustees shall be as binding upon the trust estate as if made or entered into directly by the testator in his lifetime, as evidence that the testator intended to confer upon creditors rights superior to those of the widow. It will be seen, however, that such undertakings, engagements, and accommodation are made binding *only* on the trust estate, which, as already shown, is subject to the prior charge for the payment of the annuity. It is apparent, therefore, that under the provisions of the will the trustees had no alternative but to apply the purchase-money received by them from the city of Providence from the real estate sold to it, to the payment of the annuity which was a charge upon the land prior to any liens under the trust, and if they had no alternative but to so apply it, and did so apply it, it was properly applied, and the purchaser, assuming that it was bound to see to the application of the purchase-money, cannot be held liable to account, nor the land be charged, for its payment.

It does not appear that any steps had been taken by the complainants to disaffirm the trust created by the will, and to which they had assented, prior to the sale and conveyance of the land in question to the city of Providence, on March 28, 1888. This bill, even if it could be regarded in that light, was not filed until November 25, 1889, more than eighteen months after such sale and conveyance. Assuming that the complainants have power to disaffirm the trust created in the will, after assenting to and going on under it during the ten years limited for its continuance, we think they would be estopped from proceeding against the trustees, or pur-

chasers of the trust estate, for moneys applied to the purposes speci-
fied in the will, or property disposed of in accordance with the pro-
visions of the will, prior to such disaffirmance. They cannot stand
by, apparently assenting to such acts of the trustees or purchasers
by not dissenting, and then seek to charge the trustees or pur-
chasers therefor.

The complainants object to the plea on the ground that it is
double. We do not think that it is open to this objection. It sets
up but one defence, to wit, the application of the purchase-money to
the payment of the arrears of the annuity. It is true that it goes
on to recite that the widow and the devisees and legatees named in
the will joined in the conveyance, but it does not purport to set up
this fact as a defence. Its apparent purpose is to show that the
sale and conveyance were with the assent and approval of those
joining in the conveyance. We fail to see how the statement of
this fact in any way strengthens the plea. Doubtless it would
have been better pleading if the statement had been omitted. As,
however, it does not constitute a defence and does not appear to
have been inserted with that view, we do not think its insertion
renders the plea double.

After this opinion the respondent, the city of Providence, by
consent withdrew its plea and filed an answer. The case then
came on for hearing on bill, answers filed by the different respond-
ents, and proof.

*February* 20, 1892. PER CURIAM. In our opinion of Novem-
ber 28, 1891, *ante*, page 258, we held that the annuity to the testa-
tor's widow was a lien upon the trust estate superior to any lien
arising under the trust in favor of creditors. We see no reason to
change our opinion as then expressed.

That annuity is given to the widow during her life; and it must,
therefore, continue during her life, unless she consents to its ear-
lier termination, or unless it is in the power of the court, upon a
proper bill for that purpose, to terminate the trust and the lien of
the annuity on the trust estate under the will, by the application
of the property to the payment of the debts. Assuming that such
a bill could be maintained, the present bill prays for no relief
against the widow, nor does it contain any allegations upon which
as against her we can give the claims of creditors priority over the

annuity. As the annuity, unless terminated in one or the other of the ways mentioned, must continue, and constitutes a lien on the trust estate, the trust cannot be wound up and its affairs settled during the life of the widow. Whether, technically, the trustees have power to pay the annuity to the widow or not is immaterial, for if they do not pay it, the court, upon the application of the widow, would be bound to decree the sale of so much of the trust estate as might be needed for its payment, and what the court would be bound to decree, it will sanction if done by the trustees.

Money is required, also, for the payment of taxes, insurance, repairs, and other expenses incident to the proper care and management of the trust estate. The money required for these purposes can be raised only by sales of the trust property. In making sales, however, it is the duty of the trustees to regard the interests of creditors as well as of the annuitant, and if, as is conceded, the debts are largely in excess of the value of the trust property, and the expenses of carrying the property exceed the income from it, prudent management would dictate the retention of that part of the property which is productive, and the sale, as soon as practicable, of the unproductive portions.

For this reason, and also as it is alleged that, upon a proper accounting, it will be found that the trustees have in their hands money which will be applicable to the payment of the annuity and expenses of the trust, we will, pending the taking of the account, enjoin the sale of the fourteen shares of the stock of the R. I. Hospital Trust Co., reserving to the trustees the right to move for a modification or dissolution of the injunction, should the exigencies of the trust require.

The case does not show that either the city of Providence or Frederick S. Hodges were cognizant of the application of the purchase-money paid by them respectively for the real estate purchased of the trustees, other than to the payment of the annuity and other charges under the will upon the trust estate, and if not, we do not think that they are to be held liable for its application, even if, as the complainants allege, it has been misapplied. For if we assume that the provision in the will that no purchaser shall be obliged to see to the application of any purchase-money is to be limited, as

the complainants insist, to sales by the trustees during the ten years next after the death of the testator, the power of the trustees to sell is not limited to a particular or definite purpose, but extends to the purposes of the trust generally. In such cases a purchaser is not bound to see to the application of the purchase-money. The rule is well stated in Bispham's Principles of Equity, § 277, as follows: that " whenever a trust or charge is of a definite or limited nature, a purchaser must himself see that the purchase-money is applied to the proper discharge of the trust; but whenever the trust is of a general or uncertain nature, he need not see to it." And see *Clyde* v. *Simpson et al.* 4 Ohio St. 445; *Elliot* v. *Merriman,* 2 Atk. 41, case 30; Barnardiston Ch. 78; 1 White & Tudor Lead. Cas. Eq. *59, and notes; Hill on Trustees, *342. We think the bill should be dismissed as against the city of Providence and said Hodges.

We do not think that the complainants are entitled to any prior or superior rights to other creditors of the trust estate by reason of having obtained judgments at law against the trustees individually.

A decree was entered dismissing the bill as against the city of Providence and Hodges. The complainants then filed a motion to amend the bill of complaint. This motion was opposed by the respondent trustees.

*April* 30, 1892. PER CURIAM. The bill as originally framed proceeded upon the theory that the trusts created by the will of Amos D. Smith terminated at the expiration of ten years after his decease, and prayed for an account of the trust estate in the hands of the trustees. The court having found that said trusts did not expire at the end of ten years, and that so long as the trusts continued, Amey A. Smith, the widow of Amos D. Smith, was entitled to the annuity provided in the will, and that such annuity was superior to the rights of creditors, the complainants now seek to amend the bill so as to have their claims as creditors of the estate of Amos D. Smith decreed to be a first lien upon all the estate and property now remaining of which he died seized and possessed, and all the property taken and held in lieu of that which he held at his death, subject only to the claim of his widow for dower, if any such claim she has in addition to what she has already received out of the estate; or in the alternative that such claims shall be decreed

to be a first lien upon that portion of the estate now remaining in the hands of the trustees, called by the testator the "trust estate," superior and in preference to any right or claim of said Amey A. Smith, or at all events second to her right or claim as the court may determine. The bill as proposed to be amended prays, among other things, that an account may be taken of what said widow has received from the estate of said Amos D. Smith, and that if she claims dower, the value of such at the decease of her husband may be ascertained, that an account may be taken of the amounts due the complainants and the other creditors of the deceased, and their lien being established, that the property may be sold, and the proceeds, after the payment of the costs, may be applied *pro rata* to the payment of creditors, that a receiver may be appointed for an injunction and for general relief.

It is manifest that the effect of the proposed amendments will be to make a new and different case from that which we have already heard and decided, in which nothing remains to be done but to enter a decree conformable to our decision. To grant the motion to amend as proposed is not permissible under the settled rules of equity practice. Amendments, the purpose of which is to bring before the court other parties to the controversy, or to strengthen, elucidate, or explain the case made by the original bill, or to put in issue some material fact which may directly or indirectly affect the case so made, however considerable, will be freely allowed at any stage of the proceeding, but where the effect of the amendment is to abandon the case originally made and to substitute a new and different one, and especially when it is not asked for until after the case has already been heard or even set down for a hearing, a different rule governs the discretion of the court. In such a case it will generally be found more consonant with justice to leave the complainant to bring a new suit, if so advised. *Pratt* v. *Bacon*, 10 Pick. 125, 128 ; *Lambert* v. *Jones*, 2 Patton & Heath, Va. 144, 163; *Walden* v. *Bodley*, 14 Pet. 156, 160 ; *Snead* v. *McCoull et al.* 12 How. U. S. 407, 421; *Shields et al.* v. *Barrow*, 17 How. U. S. 130 ; *Fenno* v. *Coulter*, 14 Ark. 38, 44, 46 ; *Carey* v. *Smith*, 11 Ga. 539 ; *Codington* v. *Mott*, 14 N. J. Eq. 430 ; 1 Daniell Chanc. Plead. & Prac. *425, note 5, *440.

The motion to amend is denied and dismissed.

Decree entered *April* 30, 1892. "*This cause came on to be further heard at the above named term of said court and was argued by counsel, and thereupon it is on consideration thereof ordered, adjudged, and decreed:*

"*That the complainants are not entitled to any prior or superior rights to other creditors of the trust estates described in the pleadings, by reason of their having obtained judgments as described in the answer of the respondent trustees against the said Francis M. Smith and Charles Morris Smith in their individual capacities.*

"*That the complainants' petition for an injunctive order against the respondent trustees, Francis M. Smith and Charles Morris Smith, filed January 1, 1892, asking that they be restrained from making any sales of any part of the trust estates held by them under the will of Amos D. Smith is denied and dismissed.*

"*That the annuity to the widow, Amey A. Smith, given by the said Amos D. Smith by his will, and the needful expenditures for repairs, insurance, and taxes on the estates given to the said Amey A. Smith for her life by the said Amos D. Smith by his will, are a first lien on all the trust estates held by the said Francis M. Smith and Charles Morris Smith, as trustees under said will of Amos D. Smith.*

"*That the said trustees, Francis M. Smith and Charles Morris Smith, have power and authority to make, at public or private sale, sales of the trust estates held by them to pay said annuity, and the repairs, insurance, and taxes on the real estate given by the said Amos D. Smith by his will to the said Amey A. Smith for her life, and to pay repairs, insurance, and taxes, and other expenses incident to the proper care and management of said trust estate, and they are further directed to make sales as soon as practicable of such portions of the trust estate in their hands as are unproductive and bring in no income.*

"*That the motion to amend the bill of complaint filed by the complainants March 23, 1892, is denied and dismissed.*"

*Thomas C. Greene, James Tillinghast, Joseph C. Ely & John T. Blodgett,* for complainants.

*Arnold Green,* for the respondent trustees.